## Case No. 3,349.

### CRAMTON v. TARBELL.[2]

District Court, D. Vermont. Jan. 10, 1878.

MORTGAGE TO SECURE FUTURE ADVANCES—FRAUD-ULENT CONVEYANCE OF PERSONAL PROPERTY — CHANGE OF POSSESSION — LEASE BY MORTGAGEE OUT OF POSSESSION.

[1. A mortgage to secure future advances is operative as to all advances made in good faith more than two months before the filing of a petition in bankruptcy, and as to those made in good faith within that time.]

[2. By the laws of Vermont, a conveyance of personal property will not pass the title, without change of possession, as against creditors.]

[3. A change in the title to real estate on which personalty is situated is insufficient to show a change of possession as to the personalty. There must be some actual, observable change in control.]

[4. A lease by a mortgagee out of possession, having the apparent legal title, creates the relation of landlord and tenant between the mortgagor in possession and the lessee.]

[5. A mortgage to secure, among other things, a loan to a bankrupt, made to enable the mortgagee to get possession of attached goods, and hold them as a preference over other creditors, is void to the extent of such loan, but will not taint the security as to other advances made in good faith.]

[Distinguished in Crampton v. Jerkowski, 2 Fed. 493.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Not previously reported.]

[In bankruptcy. Action by John W. Cramton, assignee in bankruptcy of Rufus D. Bucklin, against Marshall Tarbell, to set aside alleged fraudulent conveyances.]

WHEELER, District Judge. Upon hearing this cause, it appears that the deed, bond for reconveyance, and bill of sale were all more than two, and in fact more than five, months before the filing the petition in bankruptcy, which was involuntary, and are not, so far as then effective, void by the provisions of the bankrupt law [of 1867 (14 Stat. 517)]. Nothing fraudulent or deceitful about the liabilities which the conveyances were made to secure appears upon the evidence, and it is not found but that they were made in such good faith as to be valid at common law, or under the statute of 13 Eliz. c. 5, as made part of the laws of the state. Gen. St. p. 672, § 32. The deed and bond together amounted to a mere mortgage, and took effect upon the real estate covered immediately, to secure then existing or contemporaneous liabilities, and to secure future advances when they should be made, if operative at all to secure them. As to all made in good faith more than two months before the filing the petition, and as to those made within that time, if they were loans of actual value made in good faith, and it is a security taken in good faith on the occasion of making them, it is operative.

As to the personal property mentioned in the deed as conveyed with the real estate, and that mentioned in the bill of sale as conveyed separately, the conveyances were incomplete to pass the property, as against creditors and those standing in their right, till more had been done than executing the papers. By the laws of the state, continued possession by a vendor of personal property after a sale is conclusive evidence that the sale is fraudulent as to creditors. This is fully settled and well known. This transaction can only stand at all as a sale in respect to the personal property, and the orator stands in the place of and represents the creditors, so that, as to him, there must have been a change of possession good against creditors, or it is not operative at all. As to that mentioned in the bill of sale, there is no pretence of any change till after the 22d day of May, 1877. As to that mentioned in the deed, there is none except the record of the deed, and the transaction with the tenant. Possession of personal property is a fact to be found or not upon the evidence, and a change in the title of real estate on which personal property is situate, made upon the record, is not sufficient to show a change of possession of the personalty. There must be some actual change in the control of it that can be discovered by observation of the property. Flanagan v. Wood, 33 Vt. 332. Here after the papers were executed the defendant was merely a mortgagee out of possession, and the bankrupt was a mortgagor in

possession. The mortgagor leased, and the lessee became his tenant. Then the lease was made in the name of the mortgagee because he had the apparent record title, but according to the understanding of all the parties, as shown by the evidence, the mortgagee did not undertake to, and did not in fact, go into possession then under the mortgage, and make the lease for himself, but the bankrupt was left landlord in fact, and the lessee was in fact his tenant, while the then present circumstances should exist. And he did remain landlord, and the tenant remained his tenant, until on or after the 22d day of May, 1877, as is shown by all the evidence, including that of the defendant as to what he did about and had from the farm. His account of his dealings on account of the farm all commences after that time.

In this view the real conveyances of all the personal property were not accomplished, so as to be effective as such for the purposes of the present enquiry, till on or after that date, which was within the two months limited by the bankrupt law in such cases. By the provisions of that law they cannot stand unless they were taken in good faith to secure loans of actual value; made in good faith on the occasion of making the loans. Act June 22, 1874, § 11 [18 Stat. 180]. The liability as endorser was not a loan of actual value, nor was the security taken on the occasion of incurring it, but long afterwards, so that cannot be covered by the personal property. The advances of $151.17, January 30, 1877; $179.65, February 7, 1877; $246, February 15, 1877; and $165, February 28, 1877, were of actual value, and appear to have been made in good faith. They were made more than two months before the filing the petition, and are covered by the real estate.

The transaction of giving security on the personal property commenced by giving the bill of sale and deed before any of these loans, and continued till after all of them by delivery of and taking possession, so that it covered the occasion of each loan, and it is considered that security so taken was, in effect, taken on the occasion of making each loan. The money advanced on the 22d day of May to Dickerman and to Whitcomb and Atherton may have constituted a loan to the bankrupt, and may have been only a mere purchase by the defendant of their claims; but if it was a loan it was not made to enable the bankrupt to go on with his business in expectation that he would thereby be enabled to pay all his creditors, but to enable the defendant to get possession of the goods attached that he might hold them himself in preference over the rest. This was not in good faith in the eye of the bankrupt law. But this advance was not connected with the others far enough to taint the good faith with which they had been made, nor that with which the security had thus far been

taken. And as the other advances had all been previously made on faith in the security, and nothing remained to be done to perfect it but to take possession, it is not considered that it ought to or did taint the possession far enough to defeat the security as to them.

A question was made in argument whether this bill of sale, as it was made giving power of sale and undertaking to cover future purchases, would be valid at all, and if so whether it would be as to the after purchased property. But as the transaction was perfected by delivery of the whole under an agreement covering the whole, it is not necessary to consider what the effect of such a bill of sale would be not so helped out.

The result is that the defendant is entitled, against the orator, to hold the real estate to secure himself against the liability as endorser and for the advances made in good faith, and the personal property to secure the advances, and not otherwise. Therefore, let a decree be entered for an account of the avails of the personal property, and of the rents and profits of the real estate, and of the amount of these advances; and for the delivery of the remainder, if any, of the personal property, and payment of the balance of the avails, after satisfying the advances, to the orator, if any, or, in case the advances are not satisfied, for the delivery of the remainder on satisfying them; and for the conveyance of the interest acquired in the real estate to the orator on relief of the defendant from the liability as endorser and satisfying the advances within some short day to be fixed, and with costs as may be apportioned, on the coming in of the report.